Good morning. The first case for argument this morning is 12-1483 LEVITON MANUFACTURING v. ITC. Mr. Schaffer, whenever you're ready. May it please the Court. The ITC, for the most part, got it right in the Section 337 investigation before the Court today. But in the first part of today's argument, I'm going to address one issue where the ITC got it wrong. Specifically, the ITC's decisions that claimed 1 in 8 of the 151 patent were invalid as obvious should be reversed. Three elements the ITC found were present in the prior art are simply not there. A movable bridge, the first, second, and third electrical conductors, and the electrical reset switch. In addition, the Commission failed to acknowledge, let alone address, the secondary considerations evidence with respect to the 151 patent. Starting with the content of the prior art, there's no substantial evidence to support the ITC's conclusion that the three elements I refer to are in the art. I plan to address two of these elements this morning, starting with movable bridge. The ITC found that Bereskin disclosed to claim movable bridge in its Circuit Breaker 46. Don't you have a problem in that you never sought construction of that term? And you said if anything, just call it a movable structure? I don't think that the interpretation of that term affects how one reads whether or not Bereskin contains it or not. Because the function of the movable bridge in the claim is to connect the three conductors. And the argument here is that Bereskin, what they call the movable bridge, whether it's anyone's definition, doesn't connect those conductors. But you never asked for a construction that read a function into the concept of movable bridge. Isn't there a movable structure? There is, but it doesn't connect the three conductors. Circuit Breaker 46 doesn't connect the three conductors. So you're asking us to construe the term to require that? Well, the claim itself requires that. I don't think that you need to construe the term to require that. The claim, the movable bridge in the claim language itself is required to connect the three conductors. In fact, it was undisputed by the party's experts that Bereskin didn't disclose a movable bridge. The first and only time it was ever suggested that Bereskin disclosed a movable bridge. Why don't you just link it up for me? Where in the claim exactly does the movable bridge also have to connect the three conductors, as you're saying? Which patent do you want to turn to? It's Claim 1 of the 151 patent. Okay. We go down to about three quarters of the way through that claim, and we have an element that begins the first, second, and third electrical conductors. And if we go down to the end of that claim, it says, said first conductor comprises a movable bridge capable of electrically connecting the first, second, and third electrical conductors to each other. So regardless of how you interpret movable bridge, it has to connect those three conductors. No, it has to be capable of connecting the three conductors. So if the anticipatory prior art or obvious misrelated prior art discloses a structure capable of doing that, isn't that enough? It is, but it doesn't disclose that either because the— Why isn't Circuit Breaker 46 capable of doing that? Because if we look at the Bearskin reference and we look at Figure 1, it's what you call a single line diagram. It has two embodiments. It has a single-phase embodiment and it has a polyphase embodiment. And the conductors that the ITC found are connected together by Circuit Breaker 46, which are 11, 30, and 30A. The ITC found that they were connected in the single-phase embodiment. Conductor 30A is not in the single-phase embodiment. It's only in the polyphase embodiment. And we know that because the specification tells us that line bus 11A is only in the polyphase embodiment. Well, no. Actually, doesn't it say line bus 11A and or 11B may be provided in a polyphase system on column 2, lines 59 to 61? It does, and so that's the only time they're present is in that polyphase system, and that's why they're reflected in dotted lines rather than solid lines. So if you have a single-phase system, you don't have 11A and 11B. If you have a polyphase system, you can have 11A and you can also have 11B, and you can't connect all the conductors. There's three conductors in a polyphase system because you're going to have a phase-to-phase fault, and that's not disputed. So the only way the ITC's interpretation of bearskin is accurate is if they're all in a single-phase embodiment, and they're not. 11A is only in a polyphase. The only thing that connects 30A to the power supply 10 is 11A. So if 11A isn't there in the polyphase, in the single-phase, then 30A can't be there either. So regardless of how you define movable bridge, it has to connect those three conductors, and in bearskin, it simply doesn't do that. What about the disclosure of two or more single-phase hotlines? It doesn't tell you whether or not those two or more single-phase hotlines are single or polyphase in that statement and specification, and the only disclosure in Figure 1 of two or more is polyphase. It calls them single-phase hotlines. Why isn't that an implication that the three conductors can be present in a single-phase system? Column 1 lines 10 to 14 is what I'm focusing on. Because it doesn't say whether or not column 1 lines 10 to 14. It doesn't say that they're single-phase. It says two or more hot or line buses in a neutral bus. So it does show two or more hotline buses in a polyphase embodiment, not in a single-phase. But the ITC determined that that was a disclosure of a single-phase hotline, and I don't see how you're clearly correct that it's a polyphase, not a single-phase. Because the only depiction in the patent of more than one hot bus line is in a polyphase embodiment in Figure 1. That's why. And there's no disclosure of why you would need more than one single-phase hotline. Certainly Figure 1 only discloses one. So the second problem with the movable bridge construction, and once again this doesn't depend on how you construe that term, is Claim 1 says that the movable bridge comprises the first conductor. Well, Circuit Breaker 46 and what the ITC says is the first conductor 11 are separate elements. The Circuit Breaker doesn't comprise 11. They're completely separate elements, so it can't meet that limitation regardless of how you interpret Figure 1 otherwise. Claim 1 requires that the movable bridge comprise the first conductor. That's not here in bare skin. 46 and 11 are separate, completely separate elements. So when you move past movable bridge, the same concern or the same point can be made with respect to the requirement that it have first, second, and third electrical conductors. Because, once again, if you go to Figure 1, the only embodiment where there are three conductors is a polyphase embodiment in which they're not all connected to each other because you get a phase-to-phase fault, which is a disputed. And therefore, not only is the movable bridge element in Claim 1 and Claim 8 not present in bare skin, but the first, second, and third conductors element in Claim 1 and Claim 8 of the 151 is not present in bare skin. And the movable bridge element is not present in Claim 1 because it doesn't comprise the first conductor. So for all of those reasons, the ITC erred on that point. The next point goes to secondary considerations, and this court reached a decision only yesterday that's directly on point as to this. Yesterday in Apple v. ITC, the court held that in reverse the ITC on an obvious misdecision finding, quote, The ITC, however, never even mentioned, much less waived, as part of the obvious misanalysis, the secondary considerations evidence Apple presented. It stated only that it did not review the ALJ finding regarding secondary considerations. This is not adequate under our law. The ITC here on the 151 patent didn't say anything about secondary considerations. But maybe the question is what you said about secondary considerations, and I'm not as familiar as some of those on the panel might be with respect to the Apple ITC case. But it seems to me here, at least with respect to your briefing, you made an argument in one sentence about secondary considerations. I mean, you say you had to look at secondary considerations forever. It's hard for me to see in the record how your argument with respect to secondary considerations was developed. There was substantial evidence. In fact, we cite to it in our brief on pages, I think it's 48 and 49, and in our reply brief at 18 to 20. There's substantial evidence. I can give you an example of it here from the joint appendix. So when you petitioned for review of the ALJ's decision, I saw in that only one sentence saying that you presented evidence – also presented evidence of secondary considerations of non-obviousness. Was there anything more said in that petition? Yes, because right after that sentence is a cite to a brief where our post-hearing brief where we cited all that evidence. And if you go to that page of our post-hearing brief, all the evidence that we cite in our brief here on pages 48 and 49 and pages 18 to 20 is all the stuff. I thought the citation was just to one of your expert testimony, which was in the record at 11624. I believe it was broader than that, and I can check before I get back up on rebuttal on that point. Just real quickly, one example of the secondary considerations evidence is at A12112 and 113. It's a letter from the Consumer Product Safety Commission to Harold Levitin, the president and chief executive officer of Levitin, dated April 19, 1999, saying, Thank you for providing samples and materials related to the new GFCI incorporating the reset lockout feature, which Levitin is planning to introduce in the near future. The new GFCI device addresses two safety concerns expressed in the past by the U.S. Consumer Product Safety technical staff. The letter ends with the new Levitin receptacle GFCI is a major step forward for improving electrical shock protection provided by GFCIs. And the protections that are being talked about here, protections for end of life and reverse wiring, are incorporated in the inventions that are in the claims. In the event that you don't prevail on your obviousness argument with regard to Claim 1, you separately argued that the ITC erred in its conclusions regarding domestic industry. Can I ask you, why in the world didn't you allege domestic industry for all the claims that you were asserting ought to be subject to the exclusion order? And I guess, I don't know ITC law as well as you clearly do, but if you haven't alleged domestic industry, say, for Claim 39, then what's the point of having a trial on Claim 39? Because don't you have to have domestic industry established in order to get an exclusion order on Claim 39? No, you only have to have, you only have to show you practiced one claim of each asserted patent. It doesn't even have to be the same. Wait, wait, wait, one valid? No, no, no, no. One valid claim, that's right. You only have to show you practiced one valid claim of each asserted patent. It doesn't even have to be a claim you're asserting against the respondent. But I don't understand. Why didn't you, okay, given that they had a lot, Claim 1 is your broadest claim, right? So it's going to be the most likely challenge for validity because it's the broadest claim. Why in the world wouldn't you have asserted? Isn't it standard practice? Because I've looked through lots of ITC complaints for just this reason. And it seems to me standard practice is to allege domestic industry for a whole slew of claims within the patent, not to limit yourself to a single claim. Because what you've done by limiting your allegation of domestic industry to Claim 1 is you ended up here before us with a holding of infringement of all these other claims, validity of these other claims, and no domestic industry. So your failure to have alleged domestic industry for the other claims is depriving your patentee of a win across the board here. And so I don't understand why you wouldn't have done that. Usually there are a number of claims. It's usually not as many as are alleged to be infringed. And certainly in hindsight, we probably should have done that here. But as we note in our brief, the ITC asked us about a couple of the claims they did find to be valid, Claim 7 to 124, Claim 4 to 151, what is your domestic industry evidence? They asked us that on review. And we told them what that evidence was. And then they told us after they asked for the evidence that we waived it. And our position is it's not waived if the ITC asked us to give them the evidence. It is waived because the other side never got a chance to present contrary evidence to the ALJ. The ALJ is where evidence was presented, correct? Yes. Right. So if you didn't allege domestic industry for Claim 7, for example, the other side wouldn't get to show why your Phase 7 product does not fall within Claim 7, and so you would have prejudiced them by not giving them an opportunity to present that evidence. They had an opportunity to respond and did respond to the ITC's notice and the evidence. As we said, it's in the form of a presumption. And they said you didn't allege it. They're responsible. You didn't allege that Claim 7 was Practice Phase 7, Phase 7 Practice Claim 7. We didn't, but the ITC did ask us what the evidence was. The respondents had an opportunity to respond to that evidence. Our position is it's a form of presumption because the evidence is right there. The reason I don't understand your answer to Judge Moore's question is, firstly, they couldn't amend the record and reopen the record to put on new evidence. So, yeah, they could have responded to whatever you pointed to, but it wouldn't be an opportunity to present new evidence. And secondly, you're not suggesting, and I didn't see you suggesting in the brief, that you're either saying the CIT abused its discretion or that essentially there's a waiver of a waiver simply because they initially asked for additional briefing and then concluded that, no, it doesn't matter because there's a waiver here. No, we're not saying there's a waiver of a waiver. We're saying there's no waiver because they asked us to present that evidence, and we did so the evidence is in the record. But isn't what the ITC really asked was for you to identify where in the record your evidence as it relates to those claims can be found. It is, and we did that. And so did the ITC staff that supported us. We both did. And that's the evidence we put in our briefs on this appeal. Okay. Why don't we hear from the other side? We'll extort two minutes of rebuttal. And, gentlemen, you're dividing up your time, so we're going to try to hold you to that, and we're going to keep the clock running for just your amount of time as a reminder. Thank you, Your Honor. May I please have the court clerk, Cheney, on behalf of the commission. I suppose from the argument that we've heard from my opponents that they are conceding that there is no domestic industry with respect to the 124 patent, that they only relied on Claim 1, that they've conceded that Claim 1 is anticipated and invalid. You haven't conceded any of that. I don't know what you're talking about. In their brief, they clearly dispute these issues. What I've heard is that they conceded that they briefed that they only compared the elements of Claim 1 to the domestic industry product in their briefing to the commission. Oh, I'm sorry. So you're just focusing on they didn't appeal anticipation of Claim 1. Correct. So that's waived. And their briefing to the commission relied entirely on that claim. I understand. I think I heard that concession. Now I get you. I'm with you. I just wanted to clarify the record so that we can focus. That's Claim 1 of the 124. That's correct. That's correct, Your Honor. Well, let's go to the obviousness thing. I think that probably one of your biggest problems is exactly the point that was pointed out regarding the objective indicia of non-obviousness. The applicant that just came out very, very well did say that it was error for the commission not to consider that evidence in that case. Why is this one different? Why could the ITC decision be silenced on objective indicia and not be subject to reversal for that reason alone? There's at least two reasons that this case is different from the Apple case, and we studied the Apple case after it came out yesterday. The first reason is one mentioned by Judge Prost. The briefing to the commission in this case simply did not focus on secondary evidence of or secondary consideration for non-obviousness. I want to clarify what happened here. The commission was concerned about an apparent inconsistency in the ALJ's claim construction and alerted both parties to that concern in a public notice, saying we think you construed the claims for infringement differently for the purposes of validity. Then the commission asked the parties to tell the commission what the consequences would be of changing that claim construction. In response to that request for additional briefing, that's where we got the single sentence from Leviton, which does contain a string cite to some expert testimony and also a string cite attempting to incorporate by reference all of their previous briefing. Well, that did not help the commission figure out the issue that it was concerned about, which is the difference in claim construction. Part of the problem is in a complex case, especially when the commission asked for briefing on additional issues, there's only so much you can go into. You're not saying they didn't preserve the issue by at least citing them to the record evidence. Well, this court's decision, Smith-Klein-Beachum cited in our brief, says that a skeletal argument does not preserve an argument. You have to flesh it out, especially when we need to know how that argument is affected by the claim. If, in fact, we think the argument was actually preserved, tell us why the evidence wouldn't, in this case, be sufficient to justify a remand for further consideration of it. That brings me to my second point. I'd urge the court to follow the precedent in the Ormco-Align case, Sargent cited in our brief, and I think I'd like to compare that with the Apple case that the court decided yesterday. In the Apple case, in footnote 4, the court finds that there's substantial evidence of a nexus between the secondary consideration evidence that Apple presented and the patent claims it issued. In the Ormco case, the court looked at the evidence that the district judge considered and came to an opposite conclusion of the district judge as to the legal relevance of that evidence. So that's within the purview of this court to do. And the Ormco case tells us there's two categories of secondary considerations evidence that, as a legal matter, are not relevant, where the elements relied upon are found in the prior art and where the elements relied upon are not found in the claims. Now, those are exactly the two categories of evidence that Leviton's trying to rely upon in this appeal and that fleshes out for the first time in this appeal. If you look at pages 19 and 20 of Leviton's reply brief, they tell us what their secondary considerations evidence is, and the first thing that they rely upon is the isolated conductors. Well, Leviton has conceded that three isolated conductors are all found in the Bereskin reference. That's why they didn't appeal the finding with respect to the 124 patent. They've argued that the isolated conductors have to be construed consistently between the two patents, so they've conceded that that feature that is supposedly evidence of a secondary consideration is found in the prior arts. The second category of evidence that they argue is secondary, consideration of non-obviousness, is the reset switch that they say on page 20, top line, prevents reset if the GFCI cannot pass an internal test. Well, that may preserve the patentability of certain dependent claims that expressly include that feature, but that feature is nowhere found in the independent claim that the Commission found to be invalid. Now, to be clear, there are some valid claims in these patents, but the independent claims are far too broad with respect to the prior art. The Commission looked at the scope and content of the prior art, found that Claim 1 of the 151 patent is simply the very circuit defined and anticipated in Claim 1 of the 124 patent, placed in an outlet box with a back strap, mounting strap, a cover, and some connecting screws. That's all Claim 1 of the 151 patent is, and there is no argument by Leviton that taking the admittedly prior art circuit and putting it in an outlet box is somehow overcome by this evidence of secondary considerations of non-obviousness, particularly when the isolated conductors are found in the prior art, and a reset switch that prevents reset if it cannot pass an internal test is nowhere found in the independent claim. I want to, if I may, just turn quickly to the movable bridge element. Can you first respond to that issue? Can you first respond to the comprising arguments that he makes, that your friend on the other side said the reason that you've got a problem as it relates to movable bridge is because of the comprising language? Oh, that the first conductor must comprise the movable bridge. Well, there's no dispute if we look at the diagram of Bereskin, which is found, I think, on page 20 of the ITC brief. Are you talking about figure 1? Figure 1 of Bereskin. Sorry, page 36 of the ITC brief. The breaker is shown in blue, the circuit breaker 46. Now, there's no dispute that that breaker conducts electricity, and when that breaker is connected, when it's closed, it connects conductor 11 to 30 and 30A, and there's just no dispute that in that configuration, electricity is being conducted, and where we choose to conceptually say that this is a conductor or this is not a conductor is somewhat arbitrary, because it is a conductor, and when it's closed, like any switch, it's part of the same conductor that's bringing electricity from 11 to 30 and 30A. I believe Mr. Schatzer's argument, though, is that this is a figure not of a single phase. It is a polyphase. I see my time's out, if I may respond to the question very quickly. The Commission's argument finding claim 1 of the 124 patent anticipated was based on a single-phase reading of Bereskin. That factual determination of the Commission has not been appealed. It is now the law of the case that Bereskin discloses as a single-phase embodiment three isolated electrical conductors, and I would also direct the Court's attention to column 3 of Bereskin, which describes, in lines 5 through 10, the fact that even in the polyphase embodiment, we still have conductors 30, 30A, and 30B. They all exist in the single-phase embodiment. They all exist in the polyphase embodiment. That's the law of the case now. Their expert conceded it, and they concede that on page 19 of their briefing. Thank you. Why don't we hear from Mr. May? Good morning, Your Honors. May it please the Court. Intervenors, which are referred to collectively as HONAN, agree with ITC, but in the event this Court disagrees, we would like this Court to consider three alternative grounds to affirm the Commission's ruling. Could you please address the domestic industry issue for me instead, because we didn't have a chance to get to that with the ITC. Technical crime, domestic industry. Intervenors, HONAN's argument is consistent that Labrador waived any argument with respect to technical crime for the domestic industry for Claim 7 of the 1-4 patent and for Claim 4 of the 1-5-1 patent. So, in a sense, it is unfair for respondents, including HONAN, not to be able to present additional arguments, including seeking… Well, did you raise that when the Commission asked for additional views on those matters? Did you jump up and down and say, hey, wait a minute, this isn't fair, this was waived? We did argue it was waived, and we further argued that in our appeal brief that specifically there are additional terms that would need construction, such as the reestablishment, prevention of reestablishment of electrical continuity. But those matters were not resolved before the ALJ, and there's no question. Even if the issues were preserved, and based on our plain meaning reading of the terms such as reestablishment, Labrador has not put in sufficient evidence to support the domestic industry with respect to those two dependent claims. But the very evidence that they put in as it relates to Claim 1 would be the identical evidence that they would be relying upon, or did rely upon in front of the Commission as it relates to the additional claims, isn't it? They didn't need new evidence. Really, the IPC, it wasn't the absence of evidence that the IPC relied upon, it was the absence of a reference to something beyond Claim 1. With all due respect, I disagree with you all here. That's Labrador's argument. But in our brief, we identified additional claim limitations that were not addressed in Claim 1, and not addressed by Labrador's expert in expert's witness statement with respect to those claim terms. So there are still issues that were not preserved or not briefed before the ALJ, not argued at trial, at a hearing. Therefore, it would be... Therefore, it would be... You're saying Claim 7 has limitations beyond what Claim 1 has, uses different language, that language should not necessarily be assumed to be of identical scope. That's correct. There would be a need for that analysis, and that their expert didn't offer any evidence or allegation of Phase 7 falling within that language. That's correct. The same thing happened with Claim 4, the 1-by-1 patent, as well. Because Claim 4 of the 1-by-1 patent has a very long list of sequence, and while Labrador's expert offered a testimony on Claim 1 of the 1-by-1 patent, why, if domestic industry products practice Claim 1, Labrador's expert did not explain those additional sequences. Therefore, there was no evidence at the trial. And as a result, substantial evidence supports the commission's finding there's no domestic industry with respect to those two claims. Your Honor, if I may, can I go into alternative grounds for affirming? Sure, your time. So, first, if the commission agrees with Hohmann's claim construction for electroconductor, then all the circuit claims of the 1-to-4 and 1-by-1 patents would be invalid for non-enablement and not infringed. So here, the parties do not display the conventional meaning of this term, is a material object that permits an electrical current to flow easily that is capable of being electrically connected to a source of electricity. The parties do dispute whether Labrador narrowed their claim construction during the prosecution that now requires electroconductors to be directly connected to a source of electricity and to a low or user load. Specifically, during the prosecution, the examiner initially rejected Claim 1 of the 1-to-4 patent as being anticipated by Draper. The examiner said Draper teaches three isolated conductors. Labrador's prosecution attorney said, no, Draper only teaches two electric conductors. I point to a portion of Draper in which Draper describes conductors L1 and M1. And also based on Figure 2, it's very clear L1 and M1. The two conductors in Draper have very special limiting definitions that is different from conventional meaning. It requires direct connection to a source of electricity and to a load. So in Labrador's effort to distinguish Draper, Labrador essentially adopted the meaning of Draper in order to get claims allowed. And this is a clear case of disavowal of the same scope. And therefore, it would be unfair now for Labrador to argue for broader claim construction to find infringement. Now quickly, I'll just go into a second ground for alternative ground, which is based on inequitable conduct on the unit of prosecution of the 766 patent application. And the 766 patent is the parent and grandparents of the 1-to-4 and 1-to-5. Inequitable conduct, would that be an alternative ground for affirmance? I'm sorry. Or would that be necessary for a cross-appeal? That would be a ground for remanding that for further proceedings as to infectious unimportability on the 1-to-4 and 1-to-5 patent. And is there a cross-appeal existing on that issue? Yes, because they're from the IT technology or cross-appeal. But in intervener's opening brief, we preserve the arguments for inequitable conduct of the 766 patent. Essentially, that acts as a cross-appeal from the district court. So here are the facts. Does it have a problem in that the ALJ made very specific factual findings with respect to this issue, and the commission didn't disrupt those factual findings? How do you expect us to go in and reassess those facts without giving some deference to that decision? We would have the problem if the ALJ had waited the new evidence that Hoang presented to the ALJ and to the commission. But when Hoang presented the new evidence to rebut Leviton's prosecution attorneys' previous explanation why he did not disclose the material reference, that evidence was never considered, let alone waited by the ALJ or by the commission. Therefore, there is an issue, there's a clear error here. Based on the new evidence, one reasonable mind would have drawn the conclusion that Mr. Nassif, Leviton's prosecution attorney, had to act with the intent to deceive the patent office when Mr. Nassif did not disclose a material reference because it's not prior. But now, the new evidence suggests that if he disclosed another reference called Finlay, that is also not prior to the examiner. So therefore, we have presented a critical evidence. You have to pause for one moment so I can cut you off. Okay. Which is that you've exceeded your time, so we'll rely on your briefs for the remainder of the argument. Thank you. Final comments by Mr. Schaffner. Judge Preston, to answer your question, in our petition to the commission, we did have one sentence, but the first cite after that… That's on secondary consideration? Yes, ma'am. Okay. A22136, we cite our post-hearing brief at pages 41 to 43, which is found in the joint appendix at A20872 and 873. And all the evidence of secondary considerations that we cite there is the same evidence we cite in the brief to the court today, including the letter that I read to you. So how do you respond to the argument that the evidence regarding secondary considerations went to claim limitations that don't exist in Claim 1? The argument – that goes to my second point. That argument was made because the ITC here today contended that because we didn't appeal the commission's decision that Claim 1 of the 124 patent was invalid, and that the same bearskin reference was used, that we're not allowed to argue today that that reference doesn't invalidate Claim 1. And the problem with that argument is Claim 1 of the 124 patent and Claim 1 of the 151 patent are different claims. There's no movable bridge, for example, in Claim 1 of the 124 patent. So all the arguments that you heard that we conceded that point, that there were three conductors, etc., and it wasn't – the concession is based on the claim that we didn't appeal Claim 1 of the 124 patent being invalid, and that's true. But this is a different claim. You can't waive an invalidity argument on one claim of a different patent by not appealing an entirely different patent, even if it's the same prior order. And so the whole first ten minutes of my argument was explain why it doesn't have three conductors. We haven't conceded that. Those three isolated conductors are the key to the secondary considerations because that's what allowed you – that and reset lockout is what allowed you to have this advantage where you were able to deal with the reverse wiring problem and the end-of-life problem that the Consumer Product Safety Commission is talking about. So there's totally a nexus here, and that's the entire basis of their argument, this whole concession. And you heard the word concession several times. That's what that's based on. On the issue of domestic industry, can you tell me where in the record you put forth argument or evidence regarding reestablishment of electrical continuity, which is the additional element added by Claim 7, not present in Claim 1? Yes, it says A1148889. Interestingly, this is not what you cited to the commission, by the way, A114127. No. In fact, quite frankly, none of the evidence that you cited to us in regard to the domestic industry argument was cited to the commission in response to their inquiry. None of it. Actually, it was. It was cited by the staff. It's completely different evidence that you cited. I went through the evidence you cited, and I didn't see anything. So where is this, 111? A1148889, and it was cited to the commission on review. It was cited by the commission investigative staff who was supporting Levinson's position. Is that in the record? It is in the record. Yes, it is. It's in the record because it was in the record in front of the commission because the staff cited it, and now we've cited it because of that. 114, what is it? 1148889, questions 93 to 97, and that covers not only Claim 7 of the 124 patent, Your Honor, it also covers Claim 4 of the 151, that set of questions. Can I ask one more question? You don't dispute that Stanford's testimony went directly and only to Claim 1. Isn't that right? That's right. The evidence we're citing to is his description of how the Levinson product works, showing that those claim elements are met. So it wasn't in the context of satisfying that claim. That's correct. It specifically was referring only to Claim 1. That's correct, or generally how the device operated. But our view is it's form over substance to ignore the evidence. But you are correct. He did not testify and say Claim 7, Claim 4. That's right. Or even use the language of Claim 7 in his description. So I'm supposed to extrapolate from his description that this satisfies the language of Claim 7 without any allegation by him or argument by him that does that. Our view is it's form over substance. It's very straightforward. It says it works that way. That's how it works. You know, I used to be an electrical engineer in another life. It doesn't look very straightforward to me. I'm finding it difficult now in seeing how this mirrors the language of Claim 7. We have your opinion. Thank all counsel. No.